**SO ORDERED.**

**SIGNED March 31, 2011.**



_____
ROBERT SUMMERHAYS
UNITED STATES BANKRUPTCY JUDGE
_____

```
              UNITED STATES BANKRUPTCY COURT
               WESTERN DISTRICT OF LOUISIANA


IN RE:

HARVEST OIL & GAS, LLC, et al,                CASE NO. 09-50397

     Debtors                                  Chapter 11
-----------------------------------------------------------------
THE HARVEST GROUP, LLC and
HARVEST OIL & GAS, LLC,

     Plaintiffs

VERSUS                                        ADVERSARY NO. 10-05009

BARRY RAY SALSBURY, BRIAN
CARL ALBRECHT, SHELL SIBLEY,
WILLIE WILLARD POWELL and
CAROLYN MONICA GREER,

     Defendants
-----------------------------------------------------------------
                       MEMORANDUM RULING
-----------------------------------------------------------------
```

This adversary proceeding involves claims for breach of representations and warranties in two purchase and sale agreements

executed in connection with the sale of membership interests in The Harvest Group, LLC and Harvest Oil & Gas, LLC (collectively, "Harvest"). The defendants – Barry Ray Salsbury, Brian Carl Albrecht, Shell Sibley, Willie Willard Powell, and Carolyn Monica Greer (collectively, "Defendants") – are former members of Harvest who sold their membership interests to Saratoga Resources, Inc. ("Saratoga") in 2007. Defendants filed a motion for summary judgment seeking dismissal of Harvest's claims. Harvest has filed a cross-motion for partial summary judgment. The core issue raised by these motions is whether Harvest's claims for breach of the representations and warranties in the purchase agreements are barred by the terms of those agreements. The court took both motions under advisement following a hearing.

**JURISDICTION**

The court has jurisdiction over this proceeding pursuant to the provisions of 28 U.S.C. § 1334. The court finds that this is a core proceeding pursuant to the provisions of 28 U.S.C. § 157(b)(2).

**BACKGROUND**

Saratoga is an independent oil and natural gas company. In October 2007, Saratoga purchased Defendants' membership interests in the Harvest Group, LLC and Harvest Oil & Gas, LLC. In connection with this sale, Saratoga and Defendants executed two

-2-

purchase and sale agreements.  With respect to the Harvest Group, Saratoga entered into a purchase and sale agreement with all five Defendants.  With respect to Harvest Oil & Gas, Saratoga entered into a purchase and sale agreement with defendants Salsbury, Albrecht, and Sibley.  Since the contractual provisions at issue in the present motions are the same in both purchase and sale agreements, the court will refer to both agreements collectively as the "Purchase and Sale Agreement."  The sale closed on July 14, 2008.

Article III of the Purchase Agreement contains specific representations and warranties pertaining to the transaction, including representations and warranties with respect to the royalty payments.  Section 3.10 of the Purchase Agreement provides:[1]

> Payment of Royalties.  Schedule 3.10 sets forth an accurate and complete list of all overriding royalty interests pertaining to the Company Properties, and Seller and Company represent and warrant that all royalties pertaining to the Leases, Wells, Units, and the Company Properties have been, and are being, paid timely, except for those royalties as may be st forth on Schedule 3.07, which are disputed in good faith by Company and for which an adequate accounting reserve has been established by Company.

---

[1] The purchase agreements are included in the summary judgment record as Exhibits A and B to Defendants' motion for summary judgment.

-3-

Furthermore, Section 3.25 of the Purchase Agreement states:

> <u>Effectiveness of Leases</u>. Except as identified in Schedule 3.25, all leasehold and other mineral interests included within Company Properties identified on Exhibit "A" are presently being maintained to the terms of each individual Lease, and there are no outstanding demands for a release pending by any lessor.

Article 12 of the Purchase Agreement addresses Harvest's right to indemnification for breaches of the representations and warranties in the agreement. Section 12.01 of the Purchase Agreement states:

> <u>Survival</u>.
>
> (a) The representations and warranties of Company and Seller set forth in Article III and IV shall survive and continue after Closing for period of one (1) year. The representations and warranties of Buyer contained in Article V shall survive and continue after Closing for period of one (1) year and/or one (1) year after the Saratoga Shares are issued, if any. The period of time, if any, for which a representation and warranty survives Closing is called a "Survival Period." From and after the expiration of the Survival Period, no party hereto shall be under any obligation with respect to any representation or warranty to which such Survival Period relates, except with respect to matters as to which notice has been received in accordance with Section 12.01(b).
>
> (b) No party hereto shall have any indemnification obligation pursuant to this Article XII or otherwise in respect of any representation, warranty or covenant unless (I) it shall have received from the party seeking indemnification written notice of the

existence of the claim for or in respect of which indemnification is being sought and (ii) with respect to a representation and warranty, such notice is received on or before the expiration of the Survival Period for such representation and warranty. Such notice shall set forth with reasonable specificity (I) the basis under this Agreement, and the facts that otherwise form the basis of such claim, (ii) the estimate of the amount of such claim (which estimate shall not be conclusive of the final amount of such claim) and an explanation of the calculation of such estimate, including a statement of any significant assumptions employed therein, and (iii) the date on and manner in which the party delivering such notice became aware of the existence of such claim."

Section 12.02 addresses Defendants' indemnification obligations:

<u>Indemnification by Seller</u>. Seller shall indemnify, defend and hold harmless Buyer from and against any and all claims, actions, causes of action, demands, assessments, losses, damages, liabilities, judgments, settlements, penalties, costs, and expenses (including reasonable attorneys' fees and expenses), of any nature whatsoever (collectively, "Damages"), asserted against, resulting from, imposed upon, or incurred by Buyer, directly or indirectly, by reason of or resulting from (I) any breach by Company or Seller of its representations, warranties and covenants contained in this Agreement, (ii) any Liens (except for Permitted Encumbrances) or claims (other than claims contested in good faith for which adequate reserves have been established or adequate insurance exists) against the Company Properties filed or arising between execution of this Agreement and the Closing Date. Notwithstanding the foregoing, Buyer shall not be entitled to indemnification from Seller with respect to claims that Company or Seller would have

-5-

>       otherwise had notice of prior to the Closing
>       Date had Buyer complied with Section 8.07 in
>       all material respects.

Pursuant to Section 12.01, the representations and warranties in the Purchase and Sale Agreement survive for a period of one year after the closing date of the sale.  In order for Harvest to obtain indemnification based on a breach of the representations and warranties in the Purchase Agreement, Harvest had to provide notice to Defendants as required by Section 12.01(b) prior to the expiration of this one-year survival period.  The one-year survival period expired July 14, 2009.

Prior to July 14, 2009, the State of Louisiana Department of Natural Resources (the "LDNR") commenced a field audit of oil and gas royalty payments by Harvest covering royalty payments from September 1, 2005 through March 30, 2009.  This audit included a period covered by the Purchase Agreement's representations and warranties on royalty payments.  Purchase Agreement at §§ 3.10, 3.25.  On or about July 9, 2009, the LDNR informed Harvest that their preliminary audit showed that royalties had not been accurately calculated and paid to the State of Louisiana. Specifically, Harvest's treatment of marketing fees and lease use gas violated its leases or the governing state regulations.

Affidavit of Brian Daigle ("Daigle Aff.") at ¶7.[2] Some of these improper deductions were made within the period covered by the Purchase Agreement's representations and warranties. The LDNR, however, had not completed its audit and did not provide Harvest with an assessment of the amount of any underpayments that may have occurred because of the improper deductions. Pursuant to Section 12.01 of the Purchase Agreement, Harvest sent a formal notice of claim based on the initial findings of the LDNR auditors on July 13, 2009. Defendants responded that the notice was defective under Article XII of the Purchase and Sale Agreement. The LDNR ultimately concluded that Harvest owed the state $1,368,193.61 in unpaid royalties. See Exhibits 10 and 11 to Harvest's Cross-motion for Partial Summary Judgment.

Harvest filed for relief under Chapter 11 of the Bankruptcy Code on March 31, 2009. When Defendants refused Harvest's indemnification request, Harvest commenced this adversary proceeding on February 9, 2010. The parties then filed the present motions for summary judgment with respect to claims arising from the LDNR's audit. Following the hearing on these motions, the court granted Harvest's motion for leave to file an amended

---

[2] The Daigle Affidavit is included in the summary judgment record as Exhibit 9 to Harvest's cross-motion for partial summary judgment.

-7-

complaint. Harvest filed its amended complaint on February 11, 2011. The court also granted Harvest's motion to consolidate the present case with a related adversary proceeding brought against Professional Oil & Gas Management, LLC. The amended complaint does not moot the instant motions for summary judgment.

**A.  Summary Judgment Standard**

Summary judgment is proper if the pleadings, discovery products on file, and affidavits show that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law. See Fed. R. Civ. P 56(b). The purpose of summary judgment is to pierce the pleadings and to assess the proof to determine whether there is a genuine need for trial. See Matsushita Electric Industries v. Zenith Radio Corp. 475 U.S. 574, 587 (1986). Summary judgment procedure is designed to isolate and dispose of factually unsupported claims or defenses. Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). Where, as here, the movant does not bear the burden of persuasion, the movant may satisfy its summary judgment burden by pointing to an absence of evidence supporting an essential element of the non-moving party's claim. Id. at 324-326. Assuming that the movant has met this burden, the non-movant must come forward with "substantial evidence" supporting the essential elements challenged in the motion for summary judgment. Anderson v. Liberty Lobby, Inc., 477

-8-

U.S. 242, 250 (1986). "Substantial evidence" is evidence that is sufficient to withstand a motion for direct verdict and to support the verdict of a reasonable jury. Id. The non-movant cannot rely on unsupported assertions or arguments to survive summary judgment.

**B. Defendants' Motion for Summary Judgment**

Defendants contend that Harvest's indemnification rights with respect to the representations and warranties in the Purchase Agreement expired on the one year anniversary of closing, and that Harvest's July 13th notice did not preserve its claims. Defendants contend that Harvest's indemnification rights lapsed on the anniversary date because the LDNR had not completed its audit and Harvest had not suffered any loss as of July 14, 2009. Defendants also contend that the July 13th notice was defective because it lacked the information required by section 12.01(b) of the Purchase Agreement. The language in an indemnity agreement dictates the obligations of the parties to the agreement. Jessop v. City of Alexandria, 871 So.2d 1140 (La. App. 3d Cir. 2004), writ denied, 883 So.2d 991 (La. 2004). The general rules that govern the interpretation of other contracts apply in construing a contract of indemnity. See Sovereign Ins. Co., v. Texas Pipe Line Co., 488 So.2d 982 (La. 1986); see also Soloco, Inc. v. Dupree, 758 So.2d 851 (La. App. 3d Cir. 2000). Interpretation of a contract is the determination of the common intent of the parties. La. Civ. Code

-9-

art. 2045. When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent. La. Civ. Code art. 2046. Each provision in a contract must be interpreted in light of the contract's other provisions so that each is given the meaning suggested by the contract as a whole. La. Civ. Code art. 2050.

Defendants' first argument focuses on the requirement that Harvest provide written notice "of the existence of the claim." Purchase Agreement at § 12.01(b). According to defendants, this language "*presupposes* that a claim [for indemnification] must actually exist when notice is given" under that provision. Defendants' Memorandum in Support of Motion for Summary Judgment ("Def. Memo.") at 8 (emphasis in original). Defendants rely on Louisiana case law holding that a claim for indemnification does not arise until the indemnified party "actually makes payment or sustains loss." <u>Suire v. Lafayette City-Parish Government</u>, 907 So. 2d 37, 51 (La. 2005); <u>see</u> <u>also</u> <u>Meloy v. Conoco</u>, 504 So. 2d 833 (La. 1987). Defendants contend that no claim for indemnification existed at the one-year anniversary date of the closing because Harvest had not yet been assessed with any damages by the LDNR. Accordingly, Harvest is barred from asserting an indemnification claim based on the representations and warranties in the Purchase Agreement. In other words, in order for Harvest to assert its

-10-

indemnification rights under the Purchase Agreement, Harvest must become "legally bound to pay such obligations during the Survival Period and *only if* they gave notice of such claims within the time period." Def. Memo. at 9.

Defendants' argument is inconsistent with the language of the Purchase Agreement. To preserve the right to indemnification under section 12.01(b), the Purchase Agreement only requires that Harvest provide notice of the claim that is the basis for indemnification. The agreement does not impose an additional requirement that Harvest's right to indemnification be fully mature prior to the anniversary date. Defendants' argument that the language in section 12.01(b) requiring that Harvest provide notice of the "existence of a claim" means that there must be an existing, fully matured claim for *indemnification* ignores the remaining language of the provision. Reading section 12.01(b) in its entirety, the term "claim" refers not to a mature right to indemnification, but to "the claim *for or in respect of which indemnification is being sought*." Purchase Agreement at § 12.01(b) (emphasis added). Here, the claim "for or in respect of which indemnification is being sought" is a claim for breach of the representations and warranties in the Purchase Agreement pertaining to the payment of royalties. That claim is grounded on Defendants' pre-closing conduct. All the Purchase Agreement requires is that Harvest provide notice of that

-11-

underlying claim prior to the anniversary date to preserve its right to later seek indemnification. Accordingly, Defendants' reliance on University Rehabilitation Hospital, Inc. V. International Co-op Consultants, Inc., 2006 WL 1098905, *7 (W.D. La. 2006) and Winslow v. American Airlines, 2008 WL 4469962, *1 (E.D. La. 2008) is misplaced. In both University Rehabilitation Hospital and Winslow, the indemnified party attempted to recover under an indemnification agreement prior to making any payments or suffering any loss. The courts held that those indemnification claims were premature. Neither case addressed the question of notice, or the sufficiency of notice of an underlying claim that may be subject to indemnification. Here, the Purchase Agreement does not require that a claim for indemnification be asserted prior to the anniversary date, only that Harvest provide notice of the underlying claim that is the basis for indemnification.

Defendants also contend that Harvest's notice is defective because the notice did not include an estimate of damages. Section 12.01(b) of the Purchase Agreement states that the notice "shall set forth with reasonable specificity (i) the basis under this Agreement, and the facts that otherwise form the basis of such claim, (ii) the estimate of the amount of such claim (which estimate shall not be conclusive of the final amount of such claim) and an explanation of the calculation of such estimate, including

-12-

a statement of any significant assumptions employed therein, and (iii) the date on and manner in which the party delivering such notice became aware of the existence of such claim." Harvest's July 13th notice states that it could not provide an estimate of damages because the LDNR audit had not yet been completed. Harvest contends that its notice provided Defendants with reasonable notice of its claim based on the preliminary audit findings by the LDNR.

The sufficiency of Harvest's notice must judged by the requirements of the Purchase Agreement. Jessop v. City of Alexandria, 871 So.2d 1140 (La. App. 3d Cir. 2004), writ denied, 883 So.2d 991 (La. 2004) (holding that the language in an indemnity agreement dictates the obligations of the parties to the agreement). The Purchase Agreement requires written notice of a claim for breaches of that agreement's representations and warranties prior to the anniversary date in order to preserve Harvest's indemnification rights. The summary judgment record shows that written notice was provided on July 13, 2009. The Purchase Agreement requires that this written notice include specific categories of information, including an estimate of damages. This provision, however, conditions these content requirements by stating that the information must be provided with "reasonable specificity." This language indicates that the parties intended that compliance with these content requirements

-13-

be judged by a reasonableness standard.  The court cannot decide that question – the reasonableness of the notice provided by Harvest – as a matter of law based on the summary judgment record because the question of reasonableness raises genuine issues of material fact.

**C. Harvest's Motion for Partial Summary Judgment**

Harvest's cross-motion for partial summary judgment seeks summary judgment on its request for indemnification arising from alleged breaches of the representations and warranties in the Purchase Agreement.  As the court previously stated, there are genuine issues of material fact with respect to Harvest's right to indemnification.  Harvest's motion is, therefore, denied.

**CONCLUSION**

For the foregoing reasons, the court DENIES Defendants' motion for summary judgment.  The court also DENIES Harvest's cross-motion for partial summary judgment.  Counsel for Defendants and Harvest shall submit orders in conformity with the court's rulings herein within twenty (20) days of the entry of this Memorandum Ruling.

###